UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BARBARA LALONDE,

        Plaintiff,

v.                                          CASE No. 8:14-CV-580-T-TGW

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

_____

## O R D E R

The plaintiff in this case seeks judicial review of the denial of her claim for Social Security disability benefits.[1] Because the decision of the Commissioner of Social Security fails to evaluate the plaintiff's testimony of pain and swelling in the fingers of her dominant hand, the Commissioner's decision will be reversed and the matter remanded for further proceedings.

I.

The plaintiff, who was forty-five years old at the time of the administrative hearing and who has a high school education with some

_____

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 16).

college, has worked at various jobs, including as a payroll clerk and general

office clerk (Tr. 32, 33, 76-77).   She filed a claim for Social Security

disability benefits, alleging that she became disabled due to fibromyalgia,

chronic pain, PTSD (post traumatic stress disorder), depression, anxiety,

problems with right ankle, high blood pressure, high cholesterol, and carpel

tunnel syndrome in both wrists (Tr. 215). The claim was denied initially and

upon reconsideration.

The plaintiff, at her request, then received a _de novo_ hearing

before an administrative law judge.  The law judge found that the plaintiff has

severe impairments of depression, anxiety, post traumatic stress disorder

(PTSD), and right ankle injury (Tr. 13).[2]  He concluded that, with these

impairments, the plaintiff had "the residual functional capacity to perform

light work as defined in 20 CFR 404.1567(b) except that the claimant requires

a sit/stand option and is limited to unskilled work" (Tr. 17).

The law judge determined that these restrictions prevented the

plaintiff from returning to her past relevant work (Tr. 20).  However, based

---

[2]The law judge noted that the plaintiff alleged several other impairments. He found
that they were nonsevere because "the medical record simply does not support the
claimant's allegations of disabling symptoms" (Tr. 14).

on the testimony of a vocational expert, the law judge found that there are jobs that exist in significant numbers in the national economy that the plaintiff could perform, such as hand packager, survey worker, and electronic equipment assembler (Tr. 21-22). Accordingly, the law judge decided that the plaintiff was not disabled (Tr. 22). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C.

405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence,

but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff argues that the law judge failed to evaluate her testimony of pain and swelling in the fingers of her right hand (Doc. 23). This argument has merit. Consequently, the error requires a remand because the testimony, if accepted, would likely have resulted in a more limited residual functional capacity and undermine the evidentiary basis for finding the plaintiff was not disabled.

In this connection, the following exchange took place between the plaintiff and the law judge at the administrative hearing (Tr. 44-45):

> A: ... I have been having issues with my right hand, and I am waiting for a referral from the Pinellas County Health Department right now to have my right hand x-rayed because my middle finger -- don't know what's wrong with it, but my knuckle is bulged out and it's affecting my other two fingers to where I cannot grip something and pick

-5-

it up without my hand going numb, or I'll even drop whatever I'm holding out of my hand.

And I'm right-handed, so I don't really know what's going on with that until I have the x-ray and the doctor can look at the x-ray and see.

Q: Now, what can't you do with the finger you're talking about?

A: This is as far as I can bend it right now, and this finger is --

Q: You can't close a fist?

A: -- affecting these two fingers now. It started out in my middle finger, and now it's affecting the other two fingers to where the pain generates to there.

Q: So you're unable to make a fist you mean?

A: That's correct.

Q: Okay.

A: And because I don't have insurance and have to go through the Health Department, everything has to go through referrals and --

Q: Okay.

A: -- I'm waiting for that referral to come so that I can go have it x-rayed.

Upon further questioning, the plaintiff iterated that when gripping anything her right hand goes numb, adding that, "this just started like seven months ago with the whole middle finger" (Tr. 74). She testified that, consequently, she now has trouble holding pens, picking up coins, buttoning her shirt, and opening bottles and jars with her right hand (Tr. 74-75).

This testimony is corroborated by the testimony of Teresa Ewing, a long-time friend of the plaintiff. Ewing testified that she has seen the plaintiff drop things like coffee cups (Tr. 81).

The plaintiff's testimony is also supported to some extent by treatment records from the Pinellas County Health Department (Tr. 431-40). On December 27, 2012, the plaintiff reported to the medical staff joint pain, especially in her hands, and that her hands were swollen (Tr. 438, 439). Treatment notes document the observation of swelling in the plaintiff's fingers, and Dr. Cheryl Stanton diagnosed the plaintiff with diffuse joint pain (Tr. 439, 440). Subsequently, during a February 26, 2013, doctor's appointment, the plaintiff repeated her complaints of pain in her fingers (Tr. 431). Specifically, the plaintiff reported "pain in her right 3rd and 4th fingers

(primarily at PIPs)" (id.).[3]   Dr. Leslie Kidd observed upon physical
examination that the plaintiff's "3rd and 4th PIP joints [were] enlarged," and
there was a decreased range of motion (id.). Dr. Kidd ordered a referral for an
x-ray of those fingers (Tr. 432).  The plaintiff testified at the hearing that she
was still waiting for that referral to come through (Tr. 45).

      The plaintiff states correctly that the law judge never mentioned
or evaluated her testimony about her fingers, or the medical records of her
treatment with Pinellas County Health Department.  Notably, the plaintiff's
representative in his opening statement alerted the law judge to the health
department's records concerning the plaintiff's hands (Tr. 31).  Since the law
judge did not mention any of this impairment evidence, it is unclear whether
he discounted it, or merely overlooked it.  Further, if the law judge discounted
that testimony, he needed to articulate a cogent explanation for doing so.

      Thus, the law judge "must state specifically the weight accorded
each item of [impairment] evidence and the reasons for his decision" on such
evidence. Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986). Specifically,

---

[3]As the Commissioner notes, "PIP" stands for proximal interphalangeal joints that
are the middle joints in the fingers (see Doc. 25, p. 5 n.3).

the plaintiff's testimony regarding pain and swelling in her fingers was critical to the determination of her residual functional capacity because, if accepted, limitations on handling and/or fingering in the plaintiff's dominant right hand would likely be included.  Such a modification, in turn, could affect the plaintiff's vocational opportunities.  Consequently, the law judge had to articulate specific reasons for discounting that testimony, and the failure to do so constitutes reversible error.  See, e.g., Walker v. Bowen, 826 F.2d 996, 1004 (11th Cir. 1987); Owens v. Heckler, 748 F.2d 1511, 1514-15 (11th Cir. 1984).

The Commissioner argues that the law judge adequately evaluated the plaintiff's allegations of right hand impairments, and that this evidence shows "at most ... a diagnosis or some small deviation from normality, which appear[s] to be from the same conditions existing prior to those records or due to a minor, short lived injury" (Doc. 25, p. 5).  In this regard, the Commissioner notes that the law judge discussed the plaintiff's carpel tunnel syndrome, and that he expressly found it was a nonsevere impairment because the consultative examiner's findings in May 2012 were

normal, and "there is little further evidence of treatment during the period at issue" (id., p. 4, citing Tr. 14; see Tr. 383-85).

The plaintiff acknowledges the law judge's evaluation of her carpal tunnel syndrome, but argues that her finger pain and swelling is a distinct problem that appeared subsequent to the consultative examination (Doc. 23, p. 6). The plaintiff's testimony and the pertinent medical records reflect pain and swelling in her finger joints commencing at the end of 2012, many months after the consultative examination (see Tr. 74, 438). Furthermore, neither the plaintiff nor her physicians attributed that pain and swelling to carpal tunnel syndrome (Tr. 432, 440; see also Tr. 44 (the plaintiff testifying that she "do[es]n't know what's wrong with it")). Therefore, the normal findings of the plaintiff's right hand during the consultative examination, and the law judge's explanation why the carpal tunnel syndrome was not a severe impairment, does not explain the rejection of the plaintiff's later complaints of pain and swelling in her fingers.

Furthermore, the Commissioner's argument that this evidence reflects at most a "short lived injury" that does not impose any functional limitations beyond those in the residual functional capacity (Doc. 25, p. 5) is

insufficient. The law judge did not make any such findings. Furthermore, the plaintiff testified that the pain and swelling in her fingers limits the use of her right hand (Tr. 44, 74-75), so there is evidence of additional functional limitations that must be assessed.

As indicated, there is no basis to conclude that the law judge even considered the evidence of finger pain and swelling in making his determination, as he does not reference that testimony or the corroborative medical evidence in his decision.   Consequently, the Commissioner's argument is simply a post hoc rationalization.  Post hoc rationalizations of litigating counsel do not provide the basis for judicial review of an administrative decision. Motor Vehicle Manufacturers Association of the United States, Inc. v. State Farm Mutual Automobile Insurance Co., 463 U.S. 29, 50 (1983); Baker v. Commissioner of Social Security, 384 Fed. Appx. 893, 896 (11th Cir. 2010). Accordingly, the Commissioner's argument does not remedy the law judge's failure to evaluate this critical testimony.  See Winschel v. Commissioner of Social Security, 631 F.3d 1176, 1179 (11th Cir. 2011) (The court cannot affirm the decision in this circumstance "simply because some rationale might have supported the [law judge's] conclusion.").

It is, therefore, upon consideration

ORDERED:

That the Commissioner's decision is hereby **REVERSED**, and

the matter is **REMANDED** for further consideration.  The Clerk shall enter

judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this /2th day of

February, 2015.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

-12-